**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 1 7 2021

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
CENTRAL ~~LITTLE ROCK~~ DIVISION

This case assigned to District Judge _Moody_
and to Magistrate Judge _Volpe_

**JANE DOE**                                                **PLAINTIFF**

**VS.**             **NO. 4:21-cv-00420-JM**

**CABOT, ARKANSAS SCHOOL DISTRICT;**
**STEVE ROBERTS, Individually and In His Official Capacity;**
**HENRY HAWKINS, Individually and In His Official Capacity;**
**DR. TONY THURMAN, Individually and In His Official Capacity;**
**D1 SPORTS TRAINING OF LITTLE ROCK, LLC;**
**D1 SPORTS TRAINING OF CABOT, LLC;**
**JOHN BRADLEY RICH; and JOHN DOES 1-50**         **DEFENDANTS**

## COMPLAINT

Comes now Plaintiff, Jane Doe, by and through her undersigned counsel, Lacy Law Firm, and for her Complaint against Defendants Cabot, Arkansas School District, Steve Roberts, Individually and In His Official Capacity, Henry Hawkins, Individually and In His Official Capacity, D1 Sports Parent, LLC, D1 Sports Holdings, LLC, D1 Sports Training of Little Rock, LLC, D1 Sports Training of Cabot, LLC, John Bradley Rich, and John Does 1-50, state as follows:

### INTRODUCTION

1.     This is an action for injuries arising from a sexual assault that was committed against a student of Cabot High School by a strength and conditioning coach for the girl's basketball team. This action includes claims against the school district and its principal officers under Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, as well as state law claims against the school district, the sexual predator, and the

athletic training entities responsible for sending a suspected sexual predator to a high school

campus to oversee underage females using the aegis of authority granted him by those entities.

2.     Plaintiff did not discover the effects of the sexual predator's actions until the

summer of 2019, when Rich was investigated and charged by the Cabot Police Department with

child maltreatment.  Rich has subsequently plead guilty to endangering the welfare of a minor

and sexual assault.  This action is, therefore, timely pursuant to both Ark. Code Ann. § 16-56-

130 and Ark. Code Ann. § 16-118-117.

## PARTIES, JURISDICTION, AND VENUE

3.     Jane Doe was, at all times relevant herein, a minor child of seventeen years old.

She was a student at Cabot High School and played on the girls' varsity basketball team.  She

was and is currently a resident of Lonoke County, Arkansas.

4.     Defendant Cabot, Arkansas School District ("CSD") is authorized by Arkansas

law to operate and control Cabot High School.  Therefore, CSD's conduct is considered state

action under 42 U.S.C. § 1983.  CSD is located in Cabot, Lonoke County, Arkansas, and a

substantial part of the events or omissions giving rise to this lawsuit occurred in Lonoke County,

Arkansas.  Since the passage of Title IX, CSD has received and continues to receive federal

financial assistance and the benefits therefrom.  Therefore, all programs at CSD, including

athletics, are subject to the requirements of Title IX.

5.     Defendant Steve Roberts was, at all times relevant to the incidents in this

Complaint, the Athletic Director at Cabot High School, and he acted under color of the

aforementioned state legal authority and within the course and scope of his employment with

Cabot High School.

6.      Defendant Henry Hawkins is and was, at all times relevant to the incidents in this Complaint, the principal of Cabot High School, and he acted under color of the aforementioned state legal authority and within the course and scope of his employment with Cabot High School.

7.      Defendant Dr. Tony Thurman is and was, at all times relevant to the incidents in this Complaint, the Superintendent of Cabot Public Schools, and he acted under color of the aforementioned state legal authority and within the course and scope of his employment with Cabot Public Schools.

8.      Hereinafter, CSD, Defendant Roberts, Defendant Hawkins, and Defendant Thurman will be collectively referred to as the "CSD Defendants."

9.      D1 Sports Training of Little Rock, LLC is a foreign company with a principal place of business in a state other than Arkansas.  D1 Sports Training of Little Rock, LLC was an authorized franchisee of the D1 "5-Star" training program designed to "enhance performance" as well as "build confidence and improve self-esteem in boys and girls ages 7 and older."  D1's scholastic training consists of programs that offer a foundation for speed, strength and athleticism.  D1 Sports Training of Little Rock, LLC was, at certain times relevant to the incidents in this Complaint, Brad Rich's employer.  It is because Brad Rich was an employee of D1 and an authorized trainer of the D1 training program that he was allowed access as a strength and conditioning coach at Cabot High School.  D1 Sports Training of Little Rock, LLC is, therefore, liable for the actions of Brad Rich pursuant to the doctrines of vicarious liability and respondeat superior.  D1 Sports Training of Little Rock, LLC's registered agent for service of legal process is Michael Boschetti, 12115 Hinson Rd., Little Rock, AR 72212.

10.     D1 Sports Training - Cabot, LLC is an Arkansas company with a principal place

3

of business in Arkansas. D1 Sports Training - Cabot, LLC was an authorized franchisee of the D1 "5-Star" Training program designed to "enhance performance" as well as "build confidence and improve self-esteem in boys and girls ages 7 and older." D1's scholastic training consists of programs that offer a foundation for speed, strength and athleticism. D1 Sports Training - Cabot, LLC was, at certain times relevant to the incidents in this Complaint, Brad Rich's employer. It is because Brad Rich was an employee of D1 and an authorized trainer of the D1 training program that he was allowed access as a strength and conditioning coach at Cabot High School. D1 Sports Training - Cabot, LLC is, therefore, liable for the actions of Brad Rich pursuant to the doctrines of vicarious liability and respondeat superior. D1 Sports Training - Cabot, LLC's registered agent for service of legal process is Christopher Michael Branam, 209 N. 10th Street, Cabot, Arkansas 72023.

11.    Hereinafter, D1 Sports Training of Little Rock, LLC and D1 Sports Training - Cabot, LLC are referred to collectively as ("D1").

12.    Brad Rich was, at all times relevant to the incidents in this Complaint, a strength and conditioning coach for the girls' varsity basketball team at Cabot High School. Rich was and is a resident of Lonoke County, Arkansas.

13.    John Does 1-50 are individuals and/or entities that, either through their own improper actions or omissions or vicariously through other individuals and/or entities, are liable for the injuries sustained by the Plaintiff in the incident that is the subject of this lawsuit. Such individuals include employees of the Cabot High School or members of the Cabot Public School Board of Education. Despite diligent inquiry, the identities and whereabouts of these individuals remain unknown at this time. *See* Exhibit 1.

4

14.     This Court has jurisdiction over the parties to this action and the subject matter of this action pursuant to 28 U.S.C. § 1331 as Plaintiffs' Complaint alleges the deprivation of individual rights and privileges which are codified at 20 U.S.C. § 1681, et seq. and 42 U.S.C. § 1983 et seq.  Supplemental jurisdiction for state law claims is authorized under 28 U.S.C. § 1367.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

15.     Plaintiff was a seventeen-year-old female who played varsity basketball for Cabot High School.

16.     Beginning over the summer of 2015, Brad Rich was allowed to work as a strength and conditioning coach for the girls' basketball team.  Rich was an employee of D1 and the husband of another coach at the school.  He was not required to undergo any application process or background evaluation by the head coach, the athletic director, the principal, or the school board.

17.     Rich had previously been terminated from his position at D1, but had been re-hired in order to expand D1's market into the Cabot public schools.  Thus, his efforts on the girl's basketball team were a direct effort to increase awareness of the D1 "5 start" training program and expand D1's client base in the region.  Upon information and belief, Rich had previously been terminated from his position at D1 due to reports of sexual misconduct with D1 clients.

18.     When working with the underage girls at Cabot High School, Rich often made inappropriate comments and gestures.  For example, when the girls were squatting weights, he would spot them from directly behind with his arms wrapped around their waist.  He would wear gym shorts with no underwear beneath, so his genitalia would be exposed if he was in the middle

5

of an athletic move.

19.     During this same time frame, he also made sexual advances towards at least one other assistant basketball coach. He also exchanged sexual pictures on Snapchat with at least one other underage student.

20.     Other employees and agents of both D1 and Cabot Public Schools were aware of Rich's sexually aggressive behavior, and of his inappropriate comments and gestures around underage girls. Nevertheless, no action was ever taken to investigate, reprimand, discipline him or expel him from the premises.

21.     During one gym session, Rich offered to purchase alcohol for Plaintiff. He ultimately purchased her alcohol and messaged her late one evening to let her know he had it. She drove to his house and he walked to her car in his driveway and gave her the alcohol.

22.     On a second occasion, Rich messaged her to meet him on a private driveway that led into a vacant field. When she arrived, he was drinking beer and asked her to join him for a drink. He asked her to climb on top of his jeep, where he served her multiple alcoholic beverages. After she had consumed several beverages, he sexually assaulted her. He pulled her pants down and inserted two fingers into her vagina, then removed her bra and kissed and fondled her breasts.

23.     After the assault, Plaintiff drove home and told no one. She was too ashamed and embarrassed to say anything.

24.     Soon thereafter, Rich sent sexually explicit text messages to another minor student, and these messages were turned over to the school administration. As a result, Rich was banned from the premises. No additional investigation was performed to determine whether

6

Rich had committed any similar actions with respect to any other minors at the campus. No report was made to the police or to DHS, no complaint was made to D1, and nothing else was done. In fact, the school district employees who were aware of the incident were forbidden by the principal and athletic director from speaking further about it.

25.     Two years later, Rich had been allowed back on campus on multiple opportunities.

26.     Only after Plaintiff's father learned of the sexual assault in 2019 was a formal investigation conducted by the Cabot Police Department, at which time each of the events referenced above were confirmed through multiple witness accounts and documentary evidence, including preserved phone records.

27.     By 2019, Plaintiff had turned twenty and was beginning to discover the effects of the sexual assault. She began therapy and is currently attempting to cope with the emotional trauma she has been forced to endure.

28.     In 2016, CSD did not have a policy for performing background checks on "volunteer" strength and conditioning coaches. CSD also did not have a policy for reporting or investigating suspicious sexual behavior by persons in positions of authority towards minor students.

29.     Defendant Thurman has admitted in a letter to the Cabot Police Department dated July 31, 2019 that Mr. Rich "could be considered in a position of oversight since I have confirmed with staff that through he did not conduct practices, he did work with groups on strength and conditioning while other staff members were focused on other aspects of practice."

30.     An agent for CSD has admitted in a news article covering these allegations that

CSD's "protocols needed improvement."

31.     Upon information and belief, CSD has subsequently amended its policies to include policies for background checks on all coaches, paid or volunteer, and to report and investigate suspicious sexual behavior.  Had such policies been in place and followed in 2016, the sexual assault on Plaintiff would not have occurred.

## COUNT I–DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF TITLE IX (CSD DEFENDANTS)

32.     Paragraphs 1-31 are incorporated by reference as if fully set forth herein.

33.     Title IX, enacted in 1972, provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681 (a).  The Civil Rights Restoration Act of 1987 made Congress' intent plan that "program or activity," as used in Title IX, applies to any program or activity so long as any part of the public institution receives federal financial assistance.  20 U.S.C. § 1687.  Thus, CSD is subject to Title IX even if none of the funding for its girls' athletic programs comes specifically from federal sources.

34.     The Office of Civil Rights, a division of the United States Department of Education, authorized by Congress to disseminate Title IX regulations to recipients regarding implementation, interpretation, and enforcement of Title IX, has outlined Title IX compliance requirements of an educational institution.  In a Dear Colleague Letter dated April 4, 2011 ("DCL"), the Office of Civil Rights specifically outlined the requirements that educational institutions must follow pertaining to sexual harassment and sexual violence.

8

35.     The DCL states that, due to the requirements of Title IX, "schools need to ensure that their employees are trained so that they know to report harassment to appropriate school officials, and so that employees with the authority to address harassment know how to respond properly."

36.     The DCL states, "A single instance of rape is sufficiently severe to create a hostile environment."

37.     The DCL acknowledges that "Title IX requires the school to take immediate action to eliminate the harassment, prevent its recurrence, and address its effects."

38.     The DCL states that "the school's inquiry in all cases must be prompt, thorough, and impartial."

39.     The DCL addresses the role of the Title IX coordinator, including that they "should not have other job responsibilities that may create a conflict of interest.  For example, serving as the Title IX coordinator and a disciplinary hearing board member or general counsel . . ."

40.     The DCL requires "[a]ny procedures used to adjudicate complaints or sexual harassment or sexual violence, including disciplinary procedures must meet the Title IX requirement of affording a complainant a prompt and equitable resolution."

41.     During the 2014-2016 school years, Cabot High School did not mandate sexual harassment training, primary prevention, or awareness programs for staff or athletic department personnel.

42.     Upon information and belief, the Cabot Public School Student Handbook did not include any procedure for reporting or investigating suspected harassment or assault, or

9

inappropriate behavior.

43.     CSD Defendants had notice of Rich's prior sexually aggressive behavior and inappropriate conduct around minor females.

44.     CSD Defendants' failure to conduct a background check, to require an application process, or to investigate Rich's conduct in any way was clearly unreasonable in light of his known history of sexually aggressive behavior and inappropriate conduct around minor females.

45.     Plaintiff suffered discrimination in the form of sexual assault by a coach as a result of CSD Defendants' deliberate indifference in the lack of application process, background check, or investigation into Rich's conduct and behavior.

46.     The discrimination and harassment was so severe and objectively offensive so as to bar Plaintiff's access to educational opportunities and benefits.

47.     CSD Defendants' deliberate indifference resulted in risks to Plaintiff's safety.

48.     CSD Defendants acted with deliberate indifference to known acts of harassment, sexual violence, and discrimination, including but not limited to all of the allegations outlined above.

49.     The acts of CSD Defendants toward the Plaintiff evidencing deliberate indifference include, but are not limited to:

    a.    The failure to implement athletic policies for the application and
          background check of any potential coach, paid or volunteer;

    b.    The failure to implement athletic policies and procedures for the reporting
          of and investigation into suspicious behavior;

    c.    The failure to implement athletic polices that clearly set out the procedure

for trainers, coaches, and student-athletes to follow when a student-athlete

is the victim of a sexual assault;

        d.      The failure to implement policies and procedures to remove a confirmed

sexual predator from the premises.

50.      As a result of CSD Defendants' actions and omissions, Plaintiff has suffered

damages that include physical assault, mental anguish in the past and to be expected in the future,

trauma, emotional distress, fear, anxiety, as well as damage to and delays in her pursuit of

education.

51.      As a result of CSD Defendants' actions and omissions, Plaintiff is entitled to

recover compensatory damages in an amount in excess of that necessary to establish diversity

jurisdiction, as well as punitive damages, and costs of litigation including attorneys' fees and

expert fees pursuant to 42 U.S.C. § 1988.

## COUNT II–HOSTILE EDUCATIONAL ENVIRONMENT IN VIOLATION OF TITLE IX (CSD DEFENDANTS)

52.      Paragraphs 1-51 are incorporated by reference as if fully set forth herein.

53.      Plaintiff was denied access to educational opportunities and benefits as a result of

physical sexual harassment, assault, and sexual discrimination that were severe and objectively

offensive.

54.      CSD Defendants acted with deliberate indifference resulting in a hostile

educational environment for Plaintiff.

55.      CSD Defendants never reported or sanctioned Rich, simply barring him from

campus for a short time period and prohibiting any employee, coach, or faculty member who

knew of Rich's egregious behavior from discussing it with anyone. Rich was eventually permitted back on campus on multiple occasions prior to being arrested for the incidents herein. CSD Defendants' actions in this regard failed to protect the student body as a whole and created a hostile environment.

56.     CSD Defendants have deliberately failed to address the sexually hostile environment ongoing on the campus that caused Plaintiff to suffer loss of educational and athletic opportunities, along with damages, including but not limited to sexual assault, mental anguish in the past and to be expected in the future, trauma, emotional distress, fear, anxiety, as well as damage to and delays in her pursuit of education.

**COUNT III–CIVIL RIGHTS CLAIM UNDER 42 U.S.C. § 1983 (CSD DEFENDANTS)**

57.     Paragraphs 1 - 56 are incorporated by reference as if fully set forth herein.

58.     Plaintiff was entitled to equal protection of the laws and to the privileges and immunities of a citizen under the Fourth and Fourteenth Amendments. The equal protection interests and privileges and immunities protected by the Fourth and Fourteenth Amendments include the right to observance of the constitutional guarantees accorded all citizens.

59.     The United States Supreme Court has recognized a substantive due process right under the Fourteenth Amendment in claims arising from sexual harassment occurring on school property. The United States Supreme Court has recognized that this claim exists independently from and notwithstanding the passage of Title IX. *Fitzgerald v. Barnstable Sch. Committee*, 555 U.S. ___ (2009).

60.     CSD Defendants had notice of Rich's prior sexually aggressive behavior and inappropriate conduct around minor females.

12

61.     CSD Defendants' failure to conduct a background check, application process, or to investigate Rich's conduct in any way was clearly unreasonable in light of his known history of sexually aggressive behavior and inappropriate conduct around minor females.

62.     Plaintiff suffered discrimination in the form of sexual assault by a coach as a result of CSD Defendants' deliberate indifference in the lack of application, background, or investigation into Rich's conduct and behavior.

63.     CSD Defendants directly or with deliberate indifference, under color of law, approved and/or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Rich.  By failing to enact proper procedures to discourage behavior such as Rich's or to encourage and set forth a reporting and investigation process for such behavior, CSD Defendants have approved, condoned, and ratified the unlawful conduct of Rich.  The direct and proximate result of CSD Defendants' actions and/or inactions were that Plaintiff suffered loss of educational and athletic opportunities, along with damages, including but not limited to sexual assault, mental anguish in the past and to be expected in the future, trauma, emotional distress, fear, anxiety, as well as damage to and delays in her pursuit of education.

64.     CSD Defendants accomplished this violation through their power as agents for the Cabot School District while acting under the color of law as employees and agents of the City of Cabot and the State of Arkansas, constituting a deprivation of rights and privileges secured by the Constitution and laws of the United States as defined by 42 U.S.C. § 1983.  Those rights include, but are not limited to, Plaintiff's Fourth and Fourteenth Amendment due process rights.

65.     Defendants Roberts, Hawkins, and Thurman, as athletic director, principal, and superintendent, respectively, neglected their duties as policy makers of the school district and

13

municipality and, as a result, this behavior was allowed to happen under the color of state law.

66.     Defendants Roberts, Hawkins, and Thurman were employees and agent of the City of Cabot who were authorized to create policies and procedures at the Cabot High School and who were responsible for ensuring that the agents, employees, coaches, and trainers did not violate the constitutional rights of citizens. By delegating the final policymaking authority to these Defendants, the City of Cabot, Arkansas exposed itself to liability for any unconstitutional actions taken by them pursuant to that authority. Because they were given final policymaking authority, these Defendants were, in effect, the City; their actions were the City's actions. Cabot, Arkansas School District is liable because it, through Defendants Roberts, Hawkins, and Thurman, engaged in unwarranted and objectively unreasonable conduct that resulted in the sexual assault of Plaintiff.

67.     Defendants Hawkins and Thurman had the power to set Cabot High School policy, and chose to change the policy in 2020 to encourage reporting and investigating suspicious or inappropriate behavior. Recognizing that the previous policy was insufficient, these Defendants deliberately chose to expand the policy. Therefore, the Cabot School District should be held responsible for the deliberate and conscious indifference exhibited towards the value of human life with the message that was previously demonstrated by the absence of an effective policy.

68.     Upon information and belief, the Cabot School District, by and through its policy makers, Defendants Roberts, Hawkins and Thurman, had knowledge that Rich had engaged in inappropriate or suspicious behavior and presented an unreasonable risk of harm, but refused to expel him from the campus. Therefore, Rich's presence on campus became the official policy of

14

the Cabot School District.

69.     It was also the policy and custom of the Cabot School to inadequately train and supervise its employees, coaches, and trainers, specifically including Defendant Rich, thereby failing to adequately discourage further constitutional violations on the part of its employees, coaches, and trainers.  It is further alleged that the Cabot High School also did not require appropriate in-service training or retraining of coaches and trainers.  As an agent for CSD has admitted in a news article covering these allegations, CSD's "protocols needed improvement."

70.     As a result of the above described policies and customs, employees, coaches, and trainers of Cabot School District, including Defendant Rich, believed that their actions were appropriate, that their conduct would not be investigated or sanctioned, but, conversely, would be tolerated and affirmed.

71.     The above described policies and customs (and lack thereof) demonstrated a reckless, deliberate indifference on the part of policy makers of the Cabot School District to the constitutional rights of students, and were the proximate cause of the violations of Plaintiff's rights and the damages sustained as alleged herein.

72.     CSD Defendants' conduct was not only unreasonable, it may fairly be said to shock the contemporary conscience.

73.     CSD Defendants' conduct constituted intentional acts that produced constitutional injury and that were an arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.

74.     The action and/or failure to act by the CSD Defendants violated and deprived Plaintiff of her rights and privileges secured by the Constitution and the laws of the United States

as defined by 42 U.S.C. § 1983.

75.     As a direct and proximate result of the actions of CSD Defendants, Plaintiff has suffered severe physical harm, pain and suffering, and emotional distress that no reasonable person should be expected to endure.

76.     As a proximate result of the actions of the CSD Defendants, Plaintiff has been damaged in an amount not yet determined, but which exceeds the minimum amount necessary to establish federal diversity jurisdiction.

77.     Plaintiff is entitled to recover all medical expenses incurred and to be incurred in the future related to her psychological injuries, compensation for pain and suffering and mental anguish experienced and to be experienced by Plaintiff as a result of these injuries, compensation for the permanent limitation upon Plaintiff as a result of these injuries, and all other out-of-pocket costs and expenses associated with the above described injuries in an amount exceeding that required for federal diversity jurisdiction.

78.     Further, the conduct of the CSD Defendants constitutes willful and wanton action designed solely to harm Plaintiff, thererby entitling Plaintiffs to punitive damages pursuant to 42 U.S.C. § 1983 and state law.

79.     Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 and Ark. Code Ann. §§ 16-118-107 and 16-123-105.

### COUNT IV–ARKANSAS CIVIL RIGHTS ACT (CSD DEFENDANTS)

80.     Paragraphs 1 - 79 are incorporated by reference as if set forth fully herein.

81.     The Constitution of the State of Arkansas guarantees the equality of all persons before the law (Art. 2, § 3), protects against deprivation of liberty without due process of law

16

(Art. 2, § 8), protects against cruel or unusual punishments (Art. 2, § 9), protects against punishment without trial (Art. 2, § 10) and protects against unreasonable searches and seizures (Art. 2, § 15).

82.    The actions of CSD Defendants, while acting under the color of law of the Cabot School District and the State of Arkansas, constituted a deprivation of Plaintiff's rights and privileges as secured by the constitution of the State of Arkansas and as defined by Ark. Code Ann. § 16-123-105.

83.    Upon information and belief, CSD failed to implement or enforce any policy or procedure to report or investigate this type of conduct, or to conduct any preliminary investigations or background checks that would have prevented Rich's presence on campus or would have prevent his inappropriate conduct.  The CSD Defendants also recklessly failed to adequately supervise Rich.

84.    As a direct and proximate result of the actions of the CSD Defendants, Plaintiff has suffered severe physical harm, pain and suffering, and emotional distress that no reasonable person should be expected to endure.

85.    As a proximate result of the actions of the CSD Defendants, Plaintiff has been damaged in an amount not yet determined, but which exceeds the minimum amount necessary to establish federal diversity jurisdiction.

86.    Plaintiff is entitled to recover all medical expenses incurred and to be incurred in the future related to her psychological injuries, compensation for pain and suffering and mental anguish experienced and to be experienced by Plaintiff as a result of these injuries, compensation for the permanent limitation upon Plaintiff as a result of these injuries, and all other out-of-

pocket costs and expenses associated with the above described injuries in an amount exceeding

that required for federal diversity jurisdiction.

87.     Further, the conduct of the CSD Defendants constitutes willful and wanton action

designed solely to harm Plaintiff, thereby entitling Plaintiff to punitive damages pursuant to 42

U.S.C. § 1983 and state law.

88.     Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 and Ark. Code

Ann. §§ 16-118-107 and 16-123-105.

### COUNT V–ASSAULT (ALL DEFENDANTS)

89.     Paragraphs 1- 88 are incorporated by reference as if set forth fully herein.

90.     Defendant Rich perpetrated an intentional, unlawful threat of harmful and

offensive sexual contact upon Plaintiff.

91.     Defendant Rich acted in such a manner as to create a reasonable apprehension of

immediate harmful or offensive contact upon the Plaintiff.

92.     Defendant Rich intended to cause such fear and apprehension.

93.     Plaintiff was, in fact, actually put in fear and apprehension as a result of

Defendant Rich's actions.

94.     Defendant Rich has plead guilty to committing a felony pursuant to Ark. Code

Ann. § 5-27-205.  Furthermore, Defendant Rich engaged in deviate sexual activity as defined in

Ark. Code Ann. § 5-14-101.  Thus, according to Ark. Code Ann. § 16-118-104, Plaintiff, who

was injured as a result of Defendant Rich's felony conduct, is entitled to recover damages based

upon such conduct.  Plaintiff is also entitled to recover costs and attorneys fees pursuant to this

statute.

95.     At the time of the incidents herein, Defendant Rich was an employee of D1 and an agent of the CSD in a position of authority over students such as Plaintiff. Defendant Rich's actions were committed while acting within the course and scope of his employment or agency. All actions and omissions of Defendant Rich are imputed to the CSD and D1 Defendants under the doctrines of vicarious liability and respondeat superior.

96.     As a direct and proximate result of the actions of the Defendants, Plaintiff has been damaged in an amount not yet determined, but which exceeds the minimum amount necessary to establish federal diversity jurisdiction.

97.     Plaintiff is entitled to recover all medical expenses incurred and to be incurred in the future related to her psychological injuries, compensation for pain and suffering and mental anguish experienced and to be experienced by Plaintiff as a result of these injuries, compensation for the permanent limitation upon Plaintiff as a result of these injuries, and all other out-of-pocket costs and expenses associated with the above described injuries in an amount exceeding that required for federal diversity jurisdiction.

98.     Defendants knew or ought to have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in injury to Plaintiff, and they continued such conduct with malice and in reckless disregard of the consequences from which malice may be inferred. Defendant Rich, specifically, intentionally pursued a course of conduct for the purpose of causing injury and damage to Plaintiff. Plaintiff is, therefore, entitled to recover punitive damages from all Defendants in an amount to be determined by a jury at trial.

## COUNT VI–BATTERY (ALL DEFENDANTS)

99.     Paragraphs 1 - 98 are incorporated by reference as if set forth fully herein.

100.    Defendant Rich acted with intent to cause harmful or offensive sexual bodily contact with Plaintiff.

101.    As described herein, harmful and offensive sexual bodily contact with Plaintiff resulted.

102.    Defendant Rich has plead guilty to committing a felony pursuant to Ark. Code Ann. § 5-27-205.  Furthermore, Defendant Rich engaged in deviate sexual activity as defined in Ark. Code Ann. § 5-14-101.  Thus, according to Ark. Code Ann. § 16-118-104, Plaintiff, who was injured as a result of Defendant Rich's felony conduct, is entitled to recover damages based upon such conduct.  Plaintiff is also entitled to recover costs and attorneys fees pursuant to this statute.

103.    At the time of the incidents herein, Defendant Rich was an employee of D1 and an agent of the CSD in a position of authority over students such as Plaintiff.  Defendant Rich's actions were committed while acting within the course and scope of his employment or agency. All actions and omissions of Defendant Rich are imputed to the CSD and D1 Defendants under the doctrines of vicarious liability and respondeat superior.

104.    As a direct and proximate result of the actions of the Defendants, Plaintiff has been damaged in an amount not yet determined, but which exceeds the minimum amount necessary to establish federal diversity jurisdiction.

105.    Plaintiff is entitled to recover all medical expenses incurred and to be incurred in the future related to her psychological injuries, compensation for pain and suffering and mental anguish experienced and to be experienced by Plaintiff as a result of these injuries, compensation for the permanent limitation upon Plaintiff as a result of these injuries, and all other out-of-

20

pocket costs and expenses associated with the above described injuries in an amount exceeding that required for federal diversity jurisdiction.

106.    Defendants knew or ought to have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in injury to Plaintiff, and they continued such conduct with malice and in reckless disregard of the consequences from which malice may be inferred.  Defendant Rich, specifically, intentionally pursued a course of conduct for the purpose of causing injury and damage to Plaintiff.  Plaintiff is, therefore, entitled to recover punitive damages from all Defendants in an amount to be determined by a jury at trial.

## COUNT VII–NEGLIGENCE (ALL DEFENDANTS)

107.    Paragraphs 1 - 106 are incorporated by reference as if set forth fully herein.

108.    At all relevant times herein, Plaintiff, a student at Cabot High School, was placed under the care and supervision of Defendant Rich according to the established policies and procedures of the Cabot, Arkansas School District and D1, all of whom owed a duty to Plaintiff to use reasonable care to ensure her mental and physical health, safety, and welfare.  Plaintiff was a student at the High School, and an athlete targeted by D1 as a potential client.  Thus, all Defendants owed Plaintiff a duty of care.

109.    At the time of the incidents herein, Defendant Rich was an employee of D1 and an agent of the CSD in a position of authority over students such as Plaintiff.  Defendant Rich's actions were committed while acting within the course and scope of his employment or agency. All actions and omissions of Defendant Rich are imputed to the CSD and D1 Defendants under the doctrines of vicarious liability and respondeat superior.

110.    Specifically, Defendants were negligent for their failure to: (1) perform any form

21

of application process, investigation, or background check into Brad Rich, his employment, or

his history before permitting him to serve as a strength and conditioning coach for underage

minor females; (2) institute any policies or procedures designed to encourage the application,

investigation, or background check of potential coaches and trainers such as Brad Rich; (3)

encourage the reporting of and investigation into suspicious and inappropriate behavior; (4) to

implement athletic polices that clearly set out the procedure for trainers, coaches, and student-

athletes to follow when a student-athlete is the victim of a sexual assault; (5) to implement

policies and procedures to remove a confirmed sexual predator from the premises.

111.    As a direct and proximate result of the incidents herein, Plaintiff has been

damaged in an amount not yet determined, but which exceeds the minimum amount necessary to

establish federal diversity jurisdiction.

112.    Plaintiff is entitled to recover all medical expenses incurred and to be incurred in

the future related to her psychological injuries, compensation for pain and suffering and mental

anguish experienced and to be experienced by Plaintiff as a result of these injuries, compensation

for the permanent limitation upon Plaintiff as a result of these injuries, and all other out-of-

pocket costs and expenses associated with the above described injuries in an amount exceeding

that required for federal diversity jurisdiction.

113.    Defendants knew or ought to have known, in light of the surrounding

circumstances, that their conduct would naturally and probably result in injury to Plaintiff, and

they continued such conduct with malice and in reckless disregard of the consequences from

which malice may be inferred.  Defendant Rich, specifically, intentionally pursued a course of

conduct for the purpose of causing injury and damage to Plaintiff.  Plaintiff is, therefore, entitled

22

to recover punitive damages from all Defendants in an amount to be determined by a jury at trial.

114.    Upon information and belief, the Cabot School District and its employees are immune from suits based upon negligence except to the extent CSD is covered by liability insurance.  Ark. Code Ann. § 21-9-301.  Upon information and belief, CSD maintains at least one policy of liability coverage which provides potential coverage for the damages claimed by Plaintiff of up to $1,000,000.00.

## COUNT VIII–OUTRAGE (ALL DEFENDANTS)

115.    Paragraphs 1 - 114 are incorporated by reference as if set forth fully herein.

116.    Defendants' conduct herein constitutes extreme and outrageous conduct that is utterly intolerable in a civilized community.

117.    At the time of the incidents herein, Defendant Rich was an employee and/or agent of D1 and CSD and was acting within the course and scope of his employment or agency.  All actions of Defendant Rich are imputed to D1 and CSD under the doctrines of vicarious liability and respondeat superior.

118.    Defendants' behavior jeopardized the health, safety, and well being of students, athletes, and all other females, including coaches and teachers, on CSD campus.

119.    As a direct and proximate result of the actions of the Defendants, Plaintiff has been damaged in an amount not yet determined, but which exceeds the minimum amount necessary to establish federal diversity jurisdiction.

120.    Plaintiff is entitled to recover all medical expenses incurred and to be incurred in the future related to her psychological injuries, compensation for pain and suffering and mental anguish experienced and to be experienced by Plaintiff as a result of these injuries, compensation

for the permanent limitation upon Plaintiff as a result of these injuries, and all other out-of-pocket costs and expenses associated with the above described injuries in an amount exceeding that required for federal diversity jurisdiction.

121.    Further, the conduct of the CSD Defendants constitutes willful and wanton action designed solely to harm Plaintiff, thereby entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1983 and state law.  Defendants knew or ought to have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in injury to Plaintiff, and they continued such conduct with malice and in reckless disregard of the consequences from which malice may be inferred.  Defendant Rich, specifically, intentionally pursued a course of conduct for the purpose of causing injury and damage to Plaintiff.  Plaintiff is, therefore, entitled to recover punitive damages from all Defendants in an amount to be determined by a jury at trial.

122.    Plaintiffs are entitled to attorneys' fees pursuant to 42 U.S.C. § 1988 and Ark. Code Ann. §§ 16-118-107 and 16-123-105.

123.    Plaintiff hereby demands a trial by jury.

WHEREFORE, the Plaintiff, Jane Doe, prays for a trial by jury, that she have and recover judgment from and against the Defendants, jointly and severally, for compensatory damages in an amount in excess of the minimum amount for federal court diversity jurisdiction, for punitive damages as described above, for an award of reasonable attorneys' fees, for all other damages allowed by law, and for all other relief to which they may be entitled.

24

Respectfully Submitted,

Brandon Lacy (#2003098)
**Lacy Law Firm**
603 S. Main Street
Jonesboro, AR 72401
(870) 277-1144
brandon@lacylawfirm.com

_____

Brandon W. Lacy #2003098

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**JANE DOE**                                                                      **PLAINTIFF**

**VS.**                                    **NO. _____**

**CABOT, ARKANSAS SCHOOL DISTRICT;**
**STEVE ROBERTS, Individually and In His Official Capacity;**
**HENRY HAWKINS, Individually and In His Official Capacity;**
**DR. TONY THURMAN, Individually and In His Official Capacity;**
**D1 SPORTS TRAINING OF LITTLE ROCK, LLC;**
**D1 SPORTS TRAINING OF CABOT, LLC;**
**JOHN BRADLEY RICH; and JOHN DOES 1-50**                  **DEFENDANTS**

### AFFIDAVIT

I, Brandon W. Lacy, attorney for Plaintiff, Jane Doe, do solemnly swear and affirm that

the identity of the additional tortfeasors stated as John Does 1-50 are unknown.  I have attempted

a diligent inquiry to ascertain the identity of any such tortfeasors, but have been unable to

determine the identity of said tortfeasors.  Upon determination of the identity of the additional

tortfeasors, I will amend the Complaint and substitute the real names for the pseudo-names.

_____
Brandon W. Lacy

STATE OF ARKANSAS         )
                          ) ss.
COUNTY OF CRAIGHEAD       )

SUBSCRIBED AND SWORN TO before me this _17_ day of May, 2021.

_____
NOTARY PUBLIC

My Commission Expires:

_4-6-2030_____

TINA RICKEY
MY COMMISSION # 12376006
EXPIRES: April 6, 2030
Greene County

EXHIBIT
_1_