IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LILY SINCLAIR                                                                                  PLAINTIFF

VS.                                        CASE NO. 4:21-CV-00420-JM

CABOT, ARKANSAS SCHOOL DISTRICT;
STEVE ROBERTS, Individually and In His Official Capacity;
HENRY HAWKINS, Individually and In His Official Capacity;
DR. TONY THURMAN, Individually and In His Official Capacity;
D1 SPORTS HOLDING , LLC;
JOHN BRADLEY RICH                                                              DEFENDANTS

ORDER

This action arises out of an off-campus sexual assault committed by a volunteer coach of Cabot High School on a seventeen-year-old student. Pending is a motion for summary judgment filed by Defendants Cabot School District, Athletic Director Steve Roberts, Principal Henry Hawkins, and Superintendent Tony Thurman (collectively "the District Defendants"). (Doc. No. 52). Also pending is Plaintiff's motion for default judgment against Defendant D1 Sports Holding, LLC ("D1"). (Doc. No. 48). A damages hearing was held on the latter motion on August 24, 2023 and Plaintiff submitted a post-hearing brief.

Motion for Summary Judgment

The District Defendants seek summary judgment on all Plaintiffs' claims: gender discrimination and hostile education environment pursuant to Title IX; equal protection and due process claims pursuant to 42 U.S.C. § 1983; and Arkansas Civil Rights Act claims. Plaintiff concedes that her state law claims for assault, battery, negligence, and outrage should be dismissed as to the District Defendants.

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that

the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Material Facts[1]

Plaintiff Lily Sinclair was seventeen-years old during the summer of 2015. She played varsity basketball for the Cabot School District (the "district"). The girls' head basketball coach, Carla Crowder, wanted to bring on a strength trainer for the team that summer. Crowder met with Defendant John Bradley Rich, an employee of Defendant D1 Sprots Training, about the opportunity. Next Rich met with the district's athletic director, Defendant Steve Roberts to discuss Rich's role, which would be under Crowder's supervision. Rich obtained a "volunteer coach ID" from the district library that allowed him access to the campus. He was not an employee of the district. Rich was not required to undergo a background check and did not receive any training on school policies before becoming a volunteer.

Rich helped once or twice a week with strength training during summer sessions. The team would often break up into two groups, one would head to the basketball court with a coach and the other would go to the weight room with a coach and Rich. Typically, Crowder stood in the doorway so she could see both rooms. Viewing the evidence most favorably to Plaintiff, there were times when Rich was working with the girls alone in one of the areas in the facility where no district employee was able to observe his interaction with the girls or hear him communicate with them.

Shortly after the summer training sessions began, Rich began making inappropriate comments and gestures during team workouts. He made comments about what he liked in a

---

[1] These facts are taken from Defendants' statement of undisputed material facts (Doc. No. 54), which Plaintiff admitted except where noted.

2

woman, like "big butts, boobs." Plaintiff testified that she and her teammates notice Rich getting erections during workouts. Neither Plaintiff nor her teammates told any coach or trainer about Rich's behavior. Plaintiff testified that she was never alone with Rich at any time on the school campus. She does not claim that Rich inappropriately touched her or any other student on the school grounds.

Shortly after the summer training began, Plaintiff and Rich talked about him buying her some alcohol.[2] Rich bought her alcohol, she went to his house, he brought it out to her car, and Plaintiff left. There was nothing sexual about the encounter. Plaintiff testified that she did not tell anyone that Rich had purchased alcohol for her. Plaintiff and Rich communicated a couple of times via text, but only about coming to the gym and working out. The majority of her communication with Rich was via Snapchat.

A few weeks later, in June or July of 2015, Plaintiff and Rich again made plans for him to purchase alcohol for her. Using Snapchat, they planned to meet off-campus so Plaintiff could get the alcohol. When Plaintiff went to the off-campus location where they had planned to meet, Rich was already there and drinking. Plaintiff also had several drinks. Then Rich started kissing and touching her inappropriately. Plaintiff was uncomfortable with this and went home.

Plaintiff did not tell anybody about the sexual assault. She was too ashamed and embarrassed to say anything. Up until the time he assaulted her, he had never done or said anything that made her think that he would sexually assault her. Plaintiff had no more communication with Rich after that other than at the school weight room.

In September of 2015 another female student notified district employees that she had

---

[2] Plaintiff testified that the discussion was in person at the school, but she can't remember if Rich was the one who asked her if she needed alcohol or if she was the one that reached out to him about it. (Doc. No. 52-4, pp. 11-12.)

received an inappropriate text message from Rich. When the district received this notice, it ended Rich's volunteer participation with the athletic program.

Plaintiff continued to play basketball and participate in her senior year activities, made good grades, and went on to college where she got a bachelor's degree. In June of 2019, four years after Rich sexually assaulted her, Plaintiff told her father about the assault. A few weeks later she filed a police report. In August of 2019, Rich was arrested for the 2015 assault to which he ultimately pled guilty. It was only when they were contacted by the Cabot Police Department in 2019 as part of the criminal investigation that the District Defendants learned about the 2015 sexual assault on Plaintiff.

## Summary Judgment

<u>Title IX claims.</u> Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). For a school district to be held liable under title IX for sex-based discrimination of a student by a teacher,[3] a plaintiff has to prove that an official who had authority to address the alleged discrimination and to institute corrective measures had "actual knowledge of discrimination" and "fails to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The same standard applies for an action brought against a school official in their personal capacity for violations of Title IX as a § 1983 claim. *K.C. v. Mayo*, 983 F.3d 365, 368 (8th Cir. 2020).[4] "[T]o survive a motion for summary judgment here, there must be a

---

[3] For purposes of this motion, the Court will assume without deciding that Rich could be classified as a teacher.

[4] Plaintiff claims against Roberts, Hawkins, and Thurman in their official capacities are treated as claims against the district. See *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020).

4

genuine issue as to whether the District or any of the individual defendants had actual notice of sexual abuse or harassment and failed to adequately respond. *Id.*

As outlined above, the District Defendants have offered proof that the text message between Rich and a different student in September of 2015 was the first and only notice the district had of Rich's inappropriate contact with any student. Upon receiving notice, the district removed Rich from his volunteer position.

For her part, Plaintiff cites to four pieces of evidence she claims establish that the District Defendants had actual notice of Rich's inappropriate behavior prior to his assault on her. (Doc. No. 57, ¶ 58). First, she cites to page 21 of the deposition of Jennifer Asberry, an athletic trainer with the district. The cited passage related to whether Asberry told the police that she had asked another trainer at the school if it was "weird" that Rich worked out with a former student (who had since graduated) on school property. This does not establish that the District Defendants had notice of sexual harassment or abuse. Second, Plaintiff cites to the eight-page transcript of a police interview of Asberry conducted by Sergeant Renee Baugh on June 14, 2019. (Doc. No. 55-7). The Court cannot discern from those eight pages what Plaintiff claims supports her argument that the district had notice of Rich's inappropriate contact with a student prior to the text exchange that ended Rich's time volunteering with the district. Third, the citations to pages 20 and 45 Plaintiff's deposition likewise do not support her claim that the school district was previously aware of any inappropriate conduct from Rich. Finally, Plaintiff cites to page 36 of Rich's deposition (Doc. No. 55-2, p. 9), but that passage only states that Crowder "gave out my number to [the girls] if anybody needed to ask me a question about training."[5] It does not

---

[5] However, Sinclair herself testified that Rich was the one who gave the team his cell phone number at one of the training sessions and that Crowder was unaware that he had done so. (Doc. 55-1 at 12-13).

support Plaintiff's argument that the District Defendants had notice of inappropriate behavior by Rich, just that the girls had his number if they wanted to ask him any training questions.

The Eighth Circuit has set the bar high on what a plaintiff has to prove to establish notice by a school official, stating: "[t]he actual notice standard is quite onerous, and favoritism towards the student; inordinate time spent with the student; unprofessional conduct towards the student; and vague complaints about the teacher's behavior toward the student (which do not *expressly* allege sexual abuse of that student) fall short of creating actual notice." *KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 598 (8th Cir. 2021). The Court finds that Plaintiff has failed to establish that there is genuine issue of material fact on the critical issue of whether the District Defendants had actual notice of the alleged sexual harassment or sexual abuse. Absent such proof, the District Defendants are entitled to summary judgment on Plaintiff's Title IX claims.

§1983 Civil Rights Claims: Equal Protection and Substantive Due Process. "It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse." *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quoting *P.H. v. School Dist. of Kansas City*, 265 F.3d 653, 658 (8th Cir. 2001)). However, the district cannot be held responsible for the assault on Plaintiff "solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 389 (8th Cir. 2007).

The basis for Plaintiff's § 1983 claims against the district is "the lack of sufficient policies and procedures concerning the selection, training, and supervision of its volunteer trainer." (Doc. No. 56). More specifically, Plaintiff argues that there was no policy in place to restrict the use of cell phones between teachers and students. It is undisputed that Rich did not undergo a formal application process or background check before he began working with the

basketball team.[6] He was not trained by the district on school policies and procedures.

A school district can be liable for civil rights violations under § 1983 "for failing to train its employees to prevent or terminate sexual abuse." *P.H. v. Sch. Dist. of Kansas City, Missouri*, 265 F.3d 653, 658 (8th Cir. 2001) (quoting *Thelma D. v. Bd. of Educ. of City of St. Louis,* 934 F.2d 929, 932, 934 (8th Cir.1991). However, as with her Title IX claims, Plaintiff is required to establish that the district "had notice that [its] procedures were inadequate and likely to result in" a constitutional violation." *N.S. by & through Lee v. Kansas City Bd. of Police Commissioners*, 35 F.4th 1111, 1116 (8th Cir. 2022), *cert. denied sub nom. N. S., only child of decedent Stokes v. Kansas City Bd. of Police Commissioners*, 143 S. Ct. 2422, 216 L. Ed. 2d 1268 (2023). "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) (citations omitted). As discussed above in reference to the Title IX claim, Plaintiff has not shown that there is a question of material fact as to whether the District Defendants had notice that their policies were inadequate and would likely result in constitutional violations.

Plaintiff relies on the decision in *Szabla* to argue that this case presents facts under which a court could find that "a single violation of constitutional rights" could trigger the district's liability if it had "failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." 486 F.3d at 393. She points to deposition testimony by the district's designed representative who agreed that at the time of the assault on Plaintiff, the district recognized the danger in sharing cell phone numbers and text messaging between coaches and volunteers and students. (Doc. No. 55-10, p. 26-7). The Court finds that even if the basketball coach did provide Rich's cell phone number to the students, Plaintiff has not

---

[6] There is no evidence that the results of a background check would have raised any red flags.

established that this led to her assault. There is no evidence that any inappropriate communications occurred by text between Rich and Plaintiff. Further, there is no evidence that inappropriate cell phone usage between teachers and students was a "recurring situation" presenting an "obvious potential" for constitutional violations. 486 F.3d at 393 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407-8 (1997)). Defendants are entitled to summary judgment on Plaintiff's § 1983 claims as well.

Motion for Default Judgment

Plaintiff also seeks to recover damages from Defendant D1 Sports Holdings, LLC ("D1") as Rich's employer. D1 was served on June 10, 2022 and failed to respond to the SAC. A Clerk's Default was entered on July 6, 2022. The Court held a hearing on the motion for default judgment on August 25, 2023. By that time, Plaintiff had settled her claim with Rich. After hearing the evidence, the Court invited Plaintiff to submit a brief on the effect of Plaintiff's settlement with Rich on her claim against his employer, D1.

In her Second Amended Complaint (SAC), Plaintiff alleged that Brad Rich was an employee of D1 and that DI was liable for the Rich's actions under the doctrines of vicarious liability and respondeat superior. (Doc. No. 39, ¶ 9). In her post-hearing brief, Plaintiff concedes that D1 cannot be held vicariously liable for Rich's criminal conduct. Instead, Plaintiff argues that she has a claim against D1 for negligent hiring and negligent supervision or training.

Even assuming the SAC can be read to put D1 on notice that it was facing liability as a result of its own negligence, Plaintiff has failed to establish the elements necessary for direct liability to attach. "To recover under a theory of negligent supervision, a plaintiff must show that an employer knew or, through the exercise of ordinary care, should have known that its employee's conduct would subject third parties to an unreasonable risk of harm." *Paulino v.*

8

*QHG of Springdale, Inc.*, 386 S.W.3d 462, 468 (2012). To establish a claim for negligent hiring, Plaintiff would have to establish "(1) that an inadequate background check was done or there was the complete absence of a background check; (2) that a proper background check would have revealed that the employee was not qualified for the position for which he or she was hired; and (3) that if the claim is based on a criminal act by the employee, there was a direct causal connection between an inadequate background check and the criminal act for which the plaintiff is attempting to hold the employer liable." *Paulino v. QHG of Springdale, Inc.*, 386 S.W.3d 462, 469 (2012) (citing *Porter v. Harshfield,* 948 S.W.2d 83 (1997) and *Saine v. Comcast Cablevision of Ark., Inc.,* 126 S.W.3d 339, 345 (2003).

Treating the uncontested factual allegations of the SAC are true, Plaintiff has not established that D1 "knew or, through the exercise of ordinary care, should have known that [Rich's] conduct would subject third parties to an unreasonable risk of harm." *Saine,* 126 S.W.3d at 342. Furthermore, there is no mention of whether D1 conducted a background check before hiring Rich or, if it had conducted a background check, that it would have revealed that Rich was unqualified to be a trainer. Plaintiff's motion for default judgment against D1 is denied as she has failed to state a claim against D1 for which relief can be granted.

Therefore, the District Defendants' motion for summary judgment (Doc. No. 52) is GRANTED, and Plaintiff's motion for default against D1 (Doc. No. 48) is DENIED.

IT IS SO ORDERED this 18th day of January, 2024.

_____
UNITED STATES DISTRICT JUDGE